AUG 29 2024 PM3:16
FILED-USDC-CT-HARTFORD

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT          :     ss: Hartford, CT
                              :
                              :
COUNTY OF HARTFORD            :          3:24mj760 RAR

## AFFIDAVIT

I, Evan T. Riley, a Special Agent with the ATF, having been duly sworn, state:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (959) 282-3825 with an unknown subscriber currently being utilized by Warren SIMPSON, whose service provider T-Mobile US, Inc., is a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ, 07054 ("TARGET TELEPHONE"). The TARGET TELEPHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code.

4. I am currently a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been employed with the above agency since January of 2024. Prior to my employment with ATF, I was a Police Officer with the West Hartford Police Department for two years. I have participated in most traditional methods of investigations to include physical and electronic surveillance, interviews, uniformed patrol, and investigation of various criminal complaints. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy where I received hundreds of hours of specialized training in federal firearms laws and regulations. Additionally, throughout the course of my duties as a Special Agent, I have developed a growing knowledge of such firearms laws and the methods and tactics used by individuals to acquire, transfer, and possess firearms illegally. I have since participated in multiple narcotics related investigations to include the utilization of confidential informants to make undercover narcotics purchases.

5. In connection with my official duties, I have participated in multiple drug and firearms trafficking investigations of alleged criminal violations under Title 21 and Title 18, United States Code. I am familiar with the methods and practices of individuals or organizations who traffic drugs and controlled substances. Specifically, I have participated in investigations involving the purchase of drugs from suspected narcotics traffickers using undercover law enforcement personnel.

6.  I am one of the case agents that have directed the investigation that is the subject of this
    Affidavit. I have participated fully in this investigation and, as a result of this participation,
    as well as information provided by other law enforcement officers, I am thoroughly
    familiar with the information contained herein. I have not included each and every fact
    known to me concerning this investigation. Rather, I have set forth only the facts that I
    believe are essential to establish probable cause to support the issuance of the requested
    search warrant. Unless otherwise noted, wherever in this Affidavit it is asserted that a
    statement was made, the statement may be from another agent, law enforcement officer, or
    witness who may have had either direct or hearsay knowledge of that statement and to
    whom I or other law enforcement officers have spoken or whose reports were reviewed.
    Such statements are among many statements made by others and are stated in substance
    and in part unless otherwise indicated.

7.  Based on the facts set forth in this Affidavit, there is probable cause to believe that Warren
    SIMPSON and others are committing and will continue to commit violations of Title 21
    U.S.C. 841(a)(1), possession with intent to distribute and distribution of controlled
    substances ("Target Offense") using the TARGET TELEPHONE. Based on the facts set
    forth in this affidavit, there is probable cause believe that the location information
    described in Attachment B received from the acquisition of the location data from the
    TARGET TELEPHONE and the monitoring of the location data will lead to evidence of
    the Target Offense, as well as to the identification of individuals who are engaged in the
    commission of the Target Offense. The court has jurisdiction to issue the proposed warrant
    because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.

**Probable Cause**

8. On 06/27/2024, during a meeting with ATF CI-32649 ("Confidential Informant"),
hereinafter referred to as the CI, the CI advised me that there was an individual nicknamed
"Wodi" who was conducting armed narcotics sales within the city of Hartford.[1] The CI
advised that they had a phone number for "Wodi", (959) 282-3825 ("TARGET
TELEPHONE"), which the CI knew could be used to order narcotics, including fentanyl
and cocaine. A query of law enforcement databases later identified "Wodi" as Warren
SIMPSON (B/M, DOB xx/xx/1981).[2] A review of SIMPSON's criminal history revealed
the following state felony convictions:

    - 2014: Larceny 2nd Degree

    - 2013: Possession of Narcotics and Violation of Probation

    - 2012: Possession of Narcotics

    - 2005: Criminal Possession of a Firearm

    - 2002: Possession of Narcotics and Larceny 3rd Degree

    - 2002: Possession of Narcotics

    - 2000: Possession of a Weapon in a Motor Vehicle and Violation of Probation

9. I showed the CI a picture of SIMPSON, and the CI confirmed the individual in the
picture to be the person he/she knew as "Wodi". Based on this information, I began
investigating SIMPSON and his involvement in suspected criminal activity.

10. On 07/02/2024, other law enforcement personnel and I conducted an undercover controlled
purchase of narcotics from SIMPSON, utilizing the CI. The CI called the TARGET

---

[1] The CI has provided corroborated information for multiple ATF criminal investigations and has proven to be
reliable and truthful. The CI has also assisted in multiple controlled narcotics purchases.

[2] The full date of birth is known to your Affiant.

TELEPHONE and ordered a "blizzy", which is slang for 3.5 grams of cocaine. The CI then met with SIMPSON at the Family Dollar, located at 190 Farmington Avenue, Hartford, CT, and conducted a controlled purchase of approximately 3.6 grams of suspected cocaine for $120.00. The controlled substance purchase occurred inside of SIMPSON's vehicle, a heavily tinted white Mercedes sedan (TARGET VEHICLE). The CI later advised me that there was an unidentified female in the passenger seat of the TARGET VEHICLE while the transaction took place. The suspected cocaine was later field tested, which resulted in a positive indication for the presence of cocaine.

11. On 07/16/2024, other law enforcement personnel and I conducted another undercover controlled purchase of narcotics from SIMPSON, utilizing the CI. The CI called the same TARGET TELEPHONE again and ordered another "blizzy". SIMPSON directed the CI to meet on the adjacent street (Milford Street) to the McDonald's, which is located at 1303 Albany Avenue, Hartford, CT. A few moments later, the TARGET VEHICLE, i.e., a white Mercedes sedan bearing CT plate BP82577, later identified as being registered to SIMPSON, pulled in the vicinity of where the CI was parked. The CI exited his/her vehicle and entered the passenger side seat of the TARGET VEHICLE. The CI then met with SIMPSON and conducted a controlled purchase of approximately 3.0 grams of suspected cocaine for $110.00. The suspected cocaine was later field tested, which resulted in a positive indication for the presence of cocaine. During a debrief of this controlled narcotics purchase, the CI advised me that while the CI was inside of the TARGET VEHICLE, there was a significant amount of drugs in the center console, which the CI described as approximately "half a brick", as well as a significant amount of cash. The CI also advised

that they did not observe a firearm while inside of the TARGET VEHICLE but reiterated that SIMPSON is known to carry one.

12. On 07/24/2024, other law enforcement personnel and I conducted another undercover controlled purchase of narcotics from SIMPSON, utilizing the CI. The CI called the same TARGET TELEPHONE number and ordered another "blizzy". The CI advised SIMPSON that he/she would meet him at the Family Dollar, located at 190 Farmington Avenue, Hartford, CT. SIMPSON advised the CI that he was in Manchester, CT, would meet the CI at the Family Dollar shortly, and ended the phone call. A short time later, the TARGET VEHICLE parked in the parking lot on the south side of the Family Dollar, directly next to the CI's vehicle. The CI exited his/her vehicle and entered the passenger side seat of the TARGET VEHICLE. The CI then met with SIMPSON and conducted a controlled purchase of approximately 3.4 grams of suspected cocaine for $110.00. The suspected cocaine was later field tested, which resulted in a positive indication for the presence of cocaine. During a debrief of this controlled narcotics purchase, the CI advised me that while the CI was inside of the TARGET VEHICLE, there was a significant amount of drugs in the center console packaged in a clear plastic bag, which the CI described as approximately "half a brick", approximately the same amount the CI observed from another controlled purchase from SIMPSON on 07/16/2024. The CI also stated that the top layer of the center console of the TARGET VEHICLE had the large bag of drugs, while the second level underneath was filled with cash. The CI advised that they did not observe a firearm while inside of the TARGET VEHICLE but explained that SIMPSON is known to carry one and is not afraid to use it if he has to.

13. After the CI concluded the controlled purchase from SIMPSON, SIMPSON then exited the Family Dollar parking lot in the TARGET VEHICLE and ultimately continued east on Farmington Avenue. ATF Special Agents, Task Force Officers, and other involved law enforcement personnel followed SIMPSON on I-84 East to the Buckland Hills Mall area. SIMPSON ultimately stopped at the Fairfield Inn & Suites, located at 121 Pavilions Drive, Manchester, CT. SIMPSON remained parked in the TARGET VEHICLE in the parking lot of the Fairfield Inn & Suites for a few minutes. A short time later, a black Mercedes sedan bearing CT plate 1JEWELZ parked next to the TARGET VEHICLE. A female and two young children exited the black Mercedes, at which point SIMPSON exited the TARGET VEHICLE, walked up to the female and two children, and then they all walked into the Fairfield Inn & Suites together. At that point, ATF Special Agents, Task Force Officers, and other involved law enforcement personnel ended surveillance of SIMPSON. A query of law enforcement databases revealed that the black Mercedes sedan bearing CT plate 1JEWELZ is listed as a black 2021 Mercedes 300 Model C, currently registered to a Brittnie Hollis (B/F, DOB xx/xx/1990) who has a listed address of 265 Slater Street Apartment 424, Manchester, CT.[3]

14. On 07/24/2024, I received a phone ping warrant for the TARGET TELEPHONE.[4] After reviewing the phone ping location data, SIMPSON consistently frequents the area of Judson Avenue, East Hartford, CT. On 07/30/2024, Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Nestor Caraballo conducted surveillance in the area of Judson Avenue, East Hartford, CT, and observed SIMPSON and Hollis exiting 41

---

[3] The full date of birth is known to your Affiant.

[4] *See* 3:24-mj-649 (TOF) (D. Conn.).

Judson Avenue, East Hartford, CT. DEA TFO Caraballo observed Hollis enter her vehicle, the aforementioned 2021 black Mercedes sedan, and SIMPSON enter the TARGET VEHICLE. DEA TFO Caraballo advised me that the East Hartford Police Department received a complaint of vandalism in 2023 and stated that the complainant for that call was Brittnie Hollis who provided the responding officers with an address of 41 Judson Avenue, East Hartford, CT.

15. On 08/01/2024, I was contacted by DEA TFO Caraballo, and he advised me that while conducting surveillance in the area of Judson Avenue in East Hartford, he observed the TARGET VEHICLE parked in front of 41 Judson Avenue, East Hartford, CT, at approximately midnight.

16. On 08/07/2024, DEA TFO Caraballo and DEA SA R. Boyle advised ATF SA S. Christy and me that DEA TFO Caraballo had a CI that would be attempting to conduct a controlled purchase of narcotics from SIMPSON in East Hartford.[5] Based on this information, SA S. Christy and I proceeded to conduct surveillance related to this controlled substance purchase with DEA TFO Caraballo's CI. At approximately 3:50 p.m., ATF SA S. Christy and I arrived in the area of Judson Avenue, East Hartford, and observed the TARGET VEHICLE parked on the street in front of the TARGET ADDRESS. At approximately 3:52 p.m., I observed SIMPSON exit the TARGET ADDRESS via the front door, enter the driver side of the TARGET VEHICLE, and exit Judson Avenue heading towards Main Street. At approximately 3:53 p.m., DEA TFO Caraballo advised that his CI then called SIMPSON to arrange the controlled purchase of narcotics. At approximately 3:56 p.m.,

---

[5] The DEA CI has provided corroborated information for several DEA criminal investigations and has proven to be reliable and truthful. The CI has also assisted in multiple controlled narcotics purchases.

8

DEA TFO Caraballo and DEA SA R. Boyle advised that they observed SIMPSON meet with DEA TFO Caraballo's CI at a predetermined location and conduct a controlled purchase of narcotics. DEA TFO Caraballo advised that SIMPSON then left the predetermined location, and, at approximately 4:00 p.m., I observed SIMPSON arrive back at the TARGET ADDRESS in the TARGET VEHICLE.

17. On 08/09/2024, DEA TFO Caraballo advised me that while he was working patrol in East Hartford, he had a consensual citizen contact with an individual that resides at 41-43 Judson Avenue. DEA TFO Caraballo stated that there were multiple trees down across vehicles and the property of 41-43 Judson Avenue, and there was a young black male looking at the fallen tree branches. DEA TFO Caraballo confirmed that no one was injured and then, during a field interview, the young black male advised DEA TFO Caraballo that 41 Judson Avenue is the 1st floor of the structure, while 43 Judson Avenue is the 2nd and 3rd floors of the structure. The individual advised that he lives on the 2nd floor, and stated that the 3rd floor tenant is a male who owns a white Mercedes Benz (TARGET VEHICLE) and a grey Acura SUV that's always parked in front of the house. DEA TFO Caraballo advised that a law enforcement database query revealed that the aforementioned grey Acura SUV had CT plate BA95830 affixed to it, and that plate is listed as being registered on a 2011 grey Acura SUV registered to a Warren SIMPSON (DOB XX/XX/1981) with a listed address of 386 Farmington Avenue, Hartford, CT.

18. On 08/13/2024, I and other law enforcement personnel attempted to conduct another undercover controlled purchase of narcotics from SIMPSON, utilizing CI-32649. The CI called the same TARGET TELEPHONE again and ordered another "blizzy". The CI advised SIMPSON they would meet him at the Family Dollar, located at 190 Farmington

Avenue, Hartford, CT. SIMPSON advised the CI that he would be there shortly and ended the phone call. After approximately 30 minutes of waiting, the CI called SIMPSON back and SIMPSON advised that he was close and would be there in a couple minutes. A short time later, the CI called SIMPSON again to see where he was, SIMPSON advised that he was right around the corner. After SIMPSON did not show up to Family Dollar for approximately one hour, ATF SA E. Riley and S. Christy decided to call off the controlled substance purchase at approximately 5:15 p.m. SIMPSON arrived at family dollar shortly after the CI and involved law enforcement had departed the area, and the undercover purchase attempt had been terminated.

19. On 08/15/2024, ATF SA S. Christy and I conducted surveillance of the TARGET ADDRESS. While conducting surveillance, at approximately 8:23 p.m., SA S. Christy and I observed a light turn on the 3rd floor of the TARGET ADDRESS, indicating someone was present within the 43 Judson Avenue unit. There were no other lights on within the TARGET ADDRESS at the time the 3rd floor light turned on. Approximately a minute later, SA S. Christy and I observed SIMPSON exit the front door of the TARGET ADDRESS, enter the TARGET VEHICLE, and proceed to drive toward Main Street.

**General Phone Information**

20. I know that mobile phone providers have technical capabilities that allow them to collect and generate information about the locations of the mobile phones to which they provide service. Some of this information includes, but is not limited to: (1) E-911 Phase II data, also known as GPS data or latitude and longitude data, and (2) cell-site date, also known as "tower/face information" or cell tower/sector records, and (3) Call Detail Records (CDRs).

21. E-911 Phase II data provides relatively precise location information about the mobile phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

22. Cell-site data identifies the "cell tower" (i.e. antenna towers covering specific geographic area) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e. faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 phase II data.

23. In my training and experience, I have learned that T-Mobile US, Inc., is a company that can collect cell-site data about the TARGET TELEPHONE. I also know that wireless providers such as T-Mobile US, Inc., typically collect and retain cell-site data pertaining to cellular phones to which they service in their normal course of business in order to use this information for various business-related purposes. CDRs are a type of these records, and they contain data regarding telecommunications transactions without providing the content of that transaction. In part, the data contained in these CDRs includes cell site information utilized during the transaction.

24. Investigators intend to use the precise location information regarding the TARGET TELEPHONE (as well as tolls obtained from the pen register) to determine where SIMPSON travels, to identify locations associated with SIMPSON and his associates, to identify properties used by SIMPSON to stash and/or transfer narcotics and/or narcotics proceeds, and to develop evidence regarding SIMPSON's trafficking of controlled

substances. Information obtained from the warrant will help investigators develop evidence regarding who SIMPSON is talking to and will help in the identification of his associates.

25. Based upon my training and experience, I know that persons who traffic in illegal narcotics often facilitate their criminal activity by using wireless telephones. Drug traffickers routinely keep their wireless phones on their person so they can stay in frequent communication with their associates, especially when a drug transaction has been planned, is being planned, or is imminent. When expecting a large-scale narcotics transaction, traffickers will stay in communication with their source of supply, their couriers, and their other associates to facilitate their drug transactions. I have made arrests of drug traffickers, and it is very common that wireless telephones (in many instances, multiple telephones) are seized from the trafficker's person and/or possession.

26. I believe the requested electronic communications records and/or information concerning the TARGET TELEPHONE will provide information that is relevant and material to the ongoing criminal investigation described above. Among other things, this information will assist in determining·who is using the TARGET TELEPHONE to facilitate and arrange narcotics transactions.

27. The requested information will assist law enforcement officers with, among other things, the following: determining the identities of SIMPSON's associates; conducting surveillance of SIMPSON; allowing officers to ascertain SIMPSON's location when arranging and conducting narcotics transactions; identifying where SIMPSON stashes narcotics and/or narcotics proceeds; and developing evidence regarding SIMPSON's, and his associates', narcotics trafficking activities. In addition, although cell-tower site information is helpful in knowing generally where the phones are located, it does not allow

officers to initiate or conduct surveillance in a meaningful way as the requested information will.

28. Based on the foregoing, there is probable cause to believe that the requested information will lead to evidence regarding the activities described above. The requested information is necessary to determine the location of SIMPSON so that law enforcement agents can conduct physical surveillance of him and identify his narcotics trafficking associates, as well as the identities and locations of potential co-conspirators.

## AUTHORIZATION REQUEST

29. Based on the foregoing, your Affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. IT IS FURTHER REQUESTED pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3) that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET TELEPHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable

necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. IT IS FURTHER REQUESTED that the Court direct T-Mobile US, Inc., to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc. I also request that the Court direct T-Mobile US, Inc., to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US, Inc., services, including by initiating a signal to determine the location of the TARGET TELEPHONE on T-Mobile US, Inc., network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile US, Inc., for its reasonable expenses incurred in furnishing such facilities or assistance.

32. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET TELEPHONE outside of daytime hours.

## CONCLUSION

33. Based upon all the foregoing facts, I submit that this Affidavit supports probable cause for a warrant to collect the requested information about the location of the TARGET TELEPHONE, as described in Attachment A, and to seize the evidence described in Attachment B.

Respectfully submitted,

Evan Riley

Digitally signed by Evan
Riley
Date: 2024.08.29
14:02:11 -04'00'

EVAN T. RILEY
Special Agent, ATF

Subscribed and sworn to before me over the telephone
this 29 day of August, 2024.

Robert A.
Richardson

Digitally signed by Robert
A. Richardson
Date: 2024.08.29
14:59:43 -04'00'

HON. ROBERT A. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned call number (959) 282-3825 (**TARGET TELEPHONE**), which is a cellular telephone, that is in the custody or control of T-Mobile, a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, NJ 07054. As a provider of wireless communications service, the Service Provider is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. **TARGET TELEPHONE**.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I. Information to be Disclosed by the Provider:**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

1.     All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET TELEPHONE** for a period of 30 days prior to the date of the warrant, including:

     a.     The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

     b.     Information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

2.     Information associated with each communication to and from the **TARGET TELEPHONE** for a period of 30 days from the date of the warrant, during all times of day and night, including:

     a.     Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

     b.     Source and destination telephone numbers;

      c.      Date, time, and duration of communication; and

      d.      All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **TARGET TELEPHONE** will connect at the beginning and end of each communication.

3.      Information about the location of the **TARGET TELEPHONE** for a period of 30 days, during all times of day and night. "Information about the location of **TARGET TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as "per call measurement data" or "PCMD" and Timing Advanced Information, Timing Advance Report Date, or "True Call":

      a.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **TARGET TELEPHONE** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

      b.      In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

4.      This warrant does not authorize the seizure of any tangible property or the contents of any communications.

**II. Information to be Seized by the Government:**

All information described above in Section I that constitutes evidence, fruit, contraband, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute and distribution of controlled substances) involving Warren SIMPSON and others yet to be identified during the thirty-day period before, and the thirty-day period after, the date of the warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the provider in order to locate the things particularly described in this Warrant.